**LEE KAI NGOON, by his brother and next friend, Lee Kai, Plaintiff,**

v.

**John Foster DULLES, Secretary of State of the United States, Defendant.**

**Civ. A. No. 52–1417.**

United States District Court
D. Massachusetts.

Jan. 30, 1956.

Ralph F. Martino, Boston, Mass., for plaintiff.

James J. Sullivan, Jr., Asst. U. S. Atty., Boston, Mass., for defendant.

SWEENEY, Chief Judge.

In this action the plaintiff seeks a declaratory judgment that he is a derivative citizen of the United States as the son of Lee King, a native-born citizen. The suit is brought by Lee Kai, as the plaintiff's brother and next friend. In order to sustain the action, the plaintiff must establish, by a preponderance of the evidence, that Lee King was a native-born citizen, and that the plaintiff is the son of Lee King.

### Findings of Fact

Lee King was born in the United States in 1879, and retained his citizenship until his death in China in 1947. In 1909, he travelled to China and upon his return in 1912, he declared that he had married one Chin Shee, in Hong Wo Village, Toishan, China. Chin Shee never came to the United States. Between 1909 and 1947 he made five trips to China, and upon his re-entries to the United States he declared at various times the birth of five sons. On re-entering at Boston in 1934, he declared the birth of a son Lee Kai Ngoon at Hong Wo Village in 1932. The four elder sons have been admitted as derivative citizens.

I find that Lee King contracted a valid marriage in China with Chin Shee, and that from this marriage there was born, in 1932, in China, a son named Lee Kai Ngoon.

From December, 1949, to May, 1951, the plaintiff had corresponded frequently with the American Vice Consul at Hong Kong, submitting photographs and other evidence of his identity, and requested an interview "at the earliest possible date" for the purpose of securing documentation to travel to the United States. On May 24, 1951, his application was executed and filed at the American Consulate. On July 16, 1951, the petitioner had his first interview. He was asked to return with his sister-in-law as an identifying witness. On October 4, 1951, he returned for final interview, during which he answered a number of questions concerning his knowledge of the activities of relatives in Hong Kong and his native village of Hong Wo. Here the government first questioned his claimed identity. During the interview three envelopes, addressed in English and Chinese to Lee Kai Ngoon, were inspected by the Vice Consul. They had been submitted in March of 1950 by a letter from the petitioner which indicated that they were empty envelopes. It was evidently a chance discovery by the Vice Consul that one of the envelopes contained a letter addressed to "Dear Son, Kai Goon", containing instructions for answering questions which might arise concerning Lee King's family and other like matters. The letter was written in Chinese and translated at the interview. The petitioner was examined by the interviewer concerning its contents and its source, but denied ever having seen the letter or any knowledge of its existence.

On the basis of this discovery the Vice Consul recommended disapproval of the petitioner's passport application and on March 23, 1954, the State Department disapproved the petitioner's application, on the ground that the applicant's identity had not been established.

The government moved for summary judgment on the ground that the plaintiff brought his action prematurely. It argues that prior to the plaintiff's filing this action, the Department of State had not denied the plaintiff's application for passport. In support of its motion it offered affidavits taken from officers of the Department of State. I find and rule that the plaintiff's action was not brought prematurely. He waited from October, 1951, until December, 1952, for a decision, either granting or denying his request for a passport. This seems an unreasonable delay without official action, sufficient to warrant his address to the Court under former Section 903, Title 8, of the United States Code.[1]

As opposed to the so-called "coaching letters" the origin of which is not known, there is much evidence that this plaintiff is the son of Lee King. The father confirmed the existence of the son shortly after his birth. The son was included as a dependant by Lee Kai when he entered the Armed Forces in 1943. The fourth son identified the plaintiff as a brother with whom he had lived, and there was much further evidence of his direct relationship to Lee King. There is a possibility that the so-called "coaching letters" were in fact merely notes to remind the applicant of certain established facts which may have been forgotten by him. I am satisfied that from all of the evidence the plaintiff has made out a case for derivative citizenship.

### Conclusion of Law

From the foregoing I conclude and rule that Lee Kai Ngoon is a legitimate son of Lee King, and as such is a citizen of the United States and entitled to entry.

[1]. Now 8 U.S.C.A. § 1503.